Good afternoon. May it please the court. Counsel. Excuse me. Counsel. My name is Drury Ruggiero. I'm an attorney in Bozeman, Montana, where my practice focuses on public interest environmental protection law, like the case at Barr. I represent plaintiffs' appellants in this matter, and I'm in a bit of an unusual position this afternoon because the chemical company Amici, who will apparently argue this case for the appellees, filed their brief after the plaintiffs had filed their reply brief. So the plaintiffs haven't had an opportunity to respond. Counsel, I had an odd experience in this case. Removability depends on the well-pleaded complaint that was filed in state court. I couldn't find it in the excerpt. Is it there? I think what you may be speaking to is how the case ended up in federal court originally. No, I didn't ask that broad a question. I asked you whether the complaint that was filed in the state court is in the excerpts of record. I don't believe so, Your Honor, and I can – well, no, I think it actually is. Do you want me to look under the tab? That's okay. I don't want to use it. There are two complaints at issue in this case. That's how the chemical company Amici come to be here. I want to spend most of my time addressing the issues raised in their brief, but I need to take about two minutes to talk about who these companies are so that the court can understand how they fit into this appeal. This case was filed in 2000 against a Dutch multinational chemical distribution company. Let me back up for just a moment. Is the complaint that was removed, the June 7 complaint that was filed in the 13th Judicial District Court, Yellowstone County? In 2000? Yes. Yes. Okay. Now, is there in that complaint a challenge to an action by the EPA? There is not, Your Honor. What there is in that complaint is a request for remediation damages, a notice pleading request for remediation damages. If you want me to address that, I will. I think the question at the heart of this appeal is whether plaintiff's claim to create that remediation fund arises under CERCLA. What the plaintiffs have requested here is that the companies responsible for this pollution be compelled to create a fund to accomplish the cleanup. That's it. The plaintiff's experts actually worked with the Montana Department of Environmental Quality and the federal EPA to craft the cleanup that EPA is going to do, and the plaintiffs would be happy to see EPA use that fund to actually accomplish that cleanup. Nothing in plaintiff's complaint or any of the pleadings in this case or anything in the record seeks to dictate to EPA how they go about doing that cleanup. It doesn't seek to enjoin EPA's cleanup. It doesn't seek to tell them the priority or order of that cleanup. It just seeks to establish a fund for that cleanup. Let me ask you about something. As I understand it, all of the defendants except for Cuck Trucking have settled down. Cuck Trucking recites that not only did it not dump any chemicals, but it also has no insurance and no assets and cannot participate meaningfully in the settlement, if I'm not mixing this up with another case. The case had to look to be in something that was manipulated in order to get a result useful in other cases rather than this case. Cuck says it doesn't even care what it will do. It doesn't want to participate. The plaintiff says that we don't want to have a moral argument. Cuck says it's okay with them. If it wasn't for the amicus, our eyes wouldn't even be open to what's going on particularly. I'm wondering whether what we should do is just dismiss the appeal of the group rather than make a decision because it looks like it's manipulated to get a decision without a real adversary. Well, Judge, I think the concern that you're echoing is one that you're correct the amici raised, and I'll tell you what the amici themselves said about Cuck Trucking. They said, quote, degreasers such as chlorinated solvents, oil, and other wastes were dumped in the Cuck Trucking parking lot during the process of cleaning trailers. They said, quote, elevated concentrations of chlorinated solvent in groundwater samples collected at the Cuck property indicate that the property is a source of chlorinated solvent impacts to groundwater, and those are some of the chemicals at issue in this case. They said, quote, based on these data and that those data are groundwater. Is there a covenant not to execute against Cuck Trucking? There is not. Cuck Trucking is a live defendant in this case. Has the plaintiff not entered into any kind of covenant not to execute or other whole harmless to protect Cuck Trucking from consequences in this case? No, sir. On the contrary, Cuck Trucking is not the mob company that it claims to be. It realizes that these defendants are also primary defendants. I want you to respond to my question. I want to make sure that you understand my question and you may answer it. I do. There is no covenant not to execute, and Cuck Trucking is a live defendant in this case with substantial assets. Well, clearly that's what the plaintiffs are requesting is a remand to state court. The legal argument for that is that along with that section, Congress was very explicit in drafting a savings clause that's part of CERCLA and in drafting a relation to other laws portion in CERCLA. And both of those very clearly reserve to states and state court plaintiffs their right to bring claims in state court. So long as those claims are not either a response cost claim brought under a section of CERCLA or a challenge to an EPA remedial action selected. I agree with you with one correction. When these briefs were filed, EPA had not decided that it was going to do a cleanup at this site. Subsequent to that, EPA and the Department of Environmental Quality in Montana did issue a record of decision that they're going to do a cleanup. So plaintiff's initial argument that there's no EPA action selected to challenge is moot, I think, at this point. I'll concede that because, in fact, there was a decision made to do a cleanup. That said, plaintiff's efforts would actually support that cleanup. They're not contrary to that cleanup and they don't challenge it. No one judged the removal as of the time the case was removed by the complaint that was filed in the state court? Yes, of course. And the EPA had not decided on it? No, Your Honor. At the time that this case was removed, in fact, it was years prior to the time that EPA determined to do any sort of cleanup there. Now, when I read the statutes, I find a lot of language that's very supportive of your argument. The thing that troubles me most, actually, about your argument is the district courts keep going the other way. They're concerned about the state courts ordering one thing, EPA another, and defendants getting saddled with spending the money twice, as far as I can tell. Let me respond to that, sir. The only court that I am aware of that has addressed this issue head-on, that is, a case where a plaintiff has directly made a A lot of them are distinguishable, but a lot of them basically evince that thinking and come to the conclusion that it should all be in federal court. And in every case, every one of those district court cases you look at, you will see that what the plaintiffs had, in almost every case, the plaintiffs actually sued a federal agency. And in almost every case, they sued under federal law. And in every case across the board, they sued to do one of about four or five things, to enjoin the cleanup and keep EPA from doing it, or to dictate to EPA how they go about doing it and what order, or to tell EPA that they have to be subject to environmental standards that EPA doesn't want to be subject to. In all of those district court cases, the plaintiffs were seeking to tell EPA how to do their job. And that is why those district courts have found challenges. The sole court that has ever considered a case in the same procedural context as this one and with the same claims is a case out of the Northern District of Florida called Bernice Samples. And in that case, the district court undertook about a ten-page analysis of Section 113H of CERCLA and Congress's intent behind that section and found very explicitly that plaintiffs' claims to recovery and mediation costs did not constitute a challenge to an EPA action and did not support removal. And they remanded that case. That's the only case I'm aware of that addressed these issues. Some of the concerns that the court addressed there were that Congress was very, very careful to include the Savings Clause, which says, Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other federal law or state law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants. That's the Savings Clause. This district court also looked very carefully at the Relationship to Other Laws provision, and that provision reads, Let me back up now to those district court concerns in relation to this complaint. Let's say you won the state court and Subsection D of Paragraph 70, the prayer, seeks the cost of fully remediating the chemical contamination, and there is no injunction requested that would require remediation. Accordingly, I would think that the successful plaintiffs would be entitled to keep the money. Right offhand, I don't see a problem with that. If you buy property that's worth $100,000 to clean and $10,000 to dirty, you can get $90,000 to do damages. You can keep the property in the 90 or spend the money on cleaning it up, just like you would keep your dented car when you get the damages in a collision case, instead of fixing the car. However, it seems to me that EPA could then go against the numbers and say, Well, you paid the plaintiff, but the site's still dirty. There's no remediation. You have to pay for the remediation. That, I think, is a problem that a lot of these district judges are concerned about. What is the answer to that? I understand your point. The folks that are plaintiffs in this case are largely retired couples that have spent their lives working at blue-collar jobs to pay for these homes in this neighborhood. You're making a jury argument. You're not responding to what I asked you. Okay. My point is that these plaintiffs desire to use this money for an actual cleanup. I don't care what they desire. The judgment is just going to entitle them to be collected. They have actually, as the defendants recognize on page four of their brief, petitioned the district court to establish a trust so that that money will be used for a cleanup. Correct. Correct. And now that EPA has indicated that they will do a cleanup, those funds from this, the money that's deposited by these chemical companies would be in that fund and would be available for EPA to use. If anything. It occurs to me that if you win and the federal court remands the case, the federal court cannot order the state court to assure that the monies are used for cleanup. And the state court would get the case back, and it would just proceed as it damages the case in a court-ordered complaint, or however the parties shape it. Your Honor, I acknowledge that there's a practical wrinkle there. That doesn't change the fact that in the case on the record that's currently before this court, the plaintiffs have moved to establish that trust and that the case does not fit within any of the parameters that establish a challenge. On this record. Correct. So if you win, this is healed. Then your motion in the federal court to establish a trust becomes moved. There is no motion to establish the trust. The case goes back to the state court. Why do it? Your Honor, I would submit that if that situation were to arise, the first thing that these chemical companies would do would be to come back to this, would be to remove again and say, now we have a challenge because now they're undermining EPA's efforts, and now the federal district court has to have jurisdiction. As soon as that happens, there likely is federal court jurisdiction, but that's not the case on this record. I'd also like to reserve about four minutes for rebuttal, if that's okay. Thank you, counsel. Mr. Kovacic, I want to tell you at the outset that after reviewing this record, I have tentatively concluded that this was an improvident removal followed by an improvident interim appeal. So that's your burden to overcome that tentative conclusion. Okay. That's quite a hurdle to overcome. May it please the court, counsel? Mark Kovacic for the Brentag Defendants. With me is John Ross, the counsel from Montana. I think you have to step back and look at the CERCLA regulatory framework. CERCLA dictates that they are going to investigate these sites. They are going to look at them. They will determine what is to be cleaned up, and then they will either pay for it out of the super fund, or they will have the responsible parties do it. Mr. Kemmel, I have two problems with that argument. One problem that I have with it is I never know what the federal government is going to do, and what I do know is that any governmental body with law enforcement powers cannot enforce the law 100% of the cases when there is a violation. There is going to be some picking and choosing. There is going to be some accidental omissions. I can never bet on the federal government enforcing just because there is a dirty site. The second thing that I know is that ordinarily it is determined whether a case is removable by reading the state court complaint that was removed. Now, for some reason, nobody put it in the excerpts. I can't understand that, but I dug it out of the record, and I can't see where it challenged any CERCLA. CERCLA is mentioned in that complaint, I believe, Your Honor. Yeah, but tell me where there is a challenge to any CERCLA. It is in the relief section, Your Honor. They are asking at page 20 of the complaint. I don't have it in front of me. I have it in front of me. Tell me where to look. If you don't have it in front of you, you must have memorized it. The cost of fully remediating the chemical contamination. It says in D. D. That's what you're referring to. That's what I am referring to, Your Honor. Plaintiffs and class members, the cost of fully remediating the chemical contamination at the Lockwood solvent site. That's exactly what I'm. Now, in my mind, that's not a challenge to anything that the EPA does do or does not do. It just asks for the court to enter a judgment that requires that the defendants write checks to the plaintiffs. Well, you have to remember, Your Honor, that they don't own all of the property in the Lockwood solvent site. It is a 580-acre site. The plaintiffs represented by the counsel here just own a few small parcels of that. How can they, if you give them the money, how can they go out and remediate the site? Okay, so it's like most other complaints that are filed. The plaintiff is not going to get everything he asks for. Well, again, I would say that they are asking for remediation damages. As long as you do not challenge the circle of cleanup. I would step back. They were beginning to investigate the site going back in 1998, 1999. They then declared it a Superfund site in December of 1980. So they were, Your Honor, investigating this contamination. It is in the rod, and I submitted that. But I thought it's an important document for you to look at. The record of decision. That will give you the history. They were investigating. Well, I'm going to Judge Graber's question about the challenge. What I am saying, Your Honor, is in that section that you read, D, they are asking for the cost to fully remediate the chemical contamination at a Superfund site, property they do not even own. And answering your question, Judge, when they are asking for that type of remediation damages, that is a challenge to CERCLA. Well, yes, you could as long as it does not interfere with the EPA CERCLA cleanup. Again, this is, well, interference I think was pointed to a few moments ago in the questions to the appellant that if you get the money and you give it to the plaintiffs, there's no guarantee they're going to clean up the property. They could take the money and they could go to Arizona. That's what the district judge, the magistrate judge, indicated. If I award this remediation damage, you could move, go to Arizona, $29 million, which is what they want, would be gone. And maybe the principally responsible parties would not have the funds to do the cleanup. You know, the money is not unlimited, Your Honor. And what the EPA does is they come in, they do a health assessment. They look at this. They do an investigation. Then they decide how the cleanup should be done to get the maximum cleanup for the money. And then the principally responsible parties pay for that cleanup. If you award money to the plaintiffs, they may not clean up the property. They may take the money and not do it. And they don't have the authority to go on the property they want to clean up. The ---- ---- Well, number one, it's not dumping chemicals on their property. It's chemicals seeping into the groundwater, which nobody, I think, owns under Montana law. The groundwater goes under their property. They have a well. ---- ---- Well, Your Honor, I would say that the EPA takes precedence in the Superfund site over those claims of the ---- ---- Precisely. As long as those remedies do not challenge the ongoing circular cleanup. Let me tell you what the Ninth Circuit says requires a challenge. It must be a suit sought to dictate specific remedial measures, enjoin ongoing cleanup efforts, postpone the cleanup, or impose additional reporting requirements on the cleanup. That's what the Ninth Circuit has said is a challenge. And I would agree. And they seek, the appellants seek to dictate the cleanup. They want to take the money and decide how to clean it up. The cleanup should be left for the experts, the EPA, the Montana Department of Environmental ---- ---- I would say that CERCLA is going to trump the state law if there's a challenge to the cleanup. Congress indicated we have to clean up these sites. CERCLA indicates a Superfund site will get priority. There's a health assessment that is done. You have a whole regulatory scheme when you have a Superfund site. We can't lose sight of that. This is not just a run-of-the-mill contamination. This is a Superfund site. I am sympathetic to this practical argument. I am sympathetic to the notion that plaintiffs have a perfect right in my hypo, $100,000 property dirtied by pollution worth $10,000, they get $90,000 damages, they can take the $90,000 and go to Arizona, or if they wish to escape global warming, they can go to Fairbanks, Alaska to retire. And they can not spend the $90,000, and then the defendants won't have enough money to clean it up when EPA comes around. I'm totally sympathetic to your practical argument. My problem with your argument is you're not giving me statutory language to hang my hat on. And the more I think about your argument, the more it looks to me like maybe in Section 9614A, Congress just made a practical mistake. Wouldn't be the first time that they just passed a statute that's not real practical. And maybe they should have preempted the field, but it doesn't look like they did. Is there some statutory language you can give me that is a peg to hang your hat on in a practical argument? No. I'm looking at the case law primarily. There's a wealth of Ninth Circuit case law that indicates you're not going to challenge the goals of the circle of cleanup. Let me just step back again. But they didn't challenge anything that EPA ordered. If EPA had given an order, and they were saying EPA is wrong, directly or indirectly, I mean, the artful pleading doctrine would let you get around the well-pleaded complaint law. But they didn't do that because EPA hadn't ordered anything. It was just doing a study, and there was no challenge to the study. All that was going on when the complaint was filed was a study, which was not challenged by the plaintiffs. So I just can't find a statutory peg to use those cases that you cite. And it looks to me like the other cases, the ones that Judge Raffitti alludes to, and I think it was Braswell and the Fourth Circuit. We handle a lot of cases. I may be mixing up my cites. They go the other way, or the relevant ones. The preemption, the state court still has its authority. When I look at those cases, though, they're typically not dealing with a Superfund cite. The case cited by the appellant, Staples v. Conoco. Now, that was a Superfund cite, but it was cleaned up already. Does it say in the complaint that it's a Superfund cite? No, I don't believe it does, but it was under designation shortly thereafter. And by asking for those remediation damages, you were going to upset the entire circular scheme. It seems to me that the only way you could use the Superfund cite argument is with the article pleading documents. Uh-huh. I think you're correct, Your Honor. Yes, Judge Raffitti. Suppose CIRCLA went ahead with remedial measures of the usual things, and this party had already recovered damages for remediation and done some remediation, which was considered inadequate by the EPA. What would happen then? This party would still be liable, would they not? Which party are we referring to, Brentag? The party that is suing for damages. If they recover their damages and go to Arizona, and if the action proceeds in a CIRCLA Superfund manner, and it is found that the remediation that was done was inadequate to meet the requirements of the federal government, wouldn't that owner, the Arizona owner, then be responsible for further remediation? I suppose you could argue that, but it's going to be hard to find these folks. If they take the money and run and spend it, CIRCLA is trying to maximize. This is not an attachment action, you know. Right. I mean, CIRCLA must certainly have provisions to deal with that sort of a thing. Well, I think they. . . That they provided for state law to be available to people like that. Well, I think you need to step back, though, and look again. I keep coming back to this regulatory scheme. You want the experts to be doing the remediation. You want people like EPA, MDEQ to assess the contamination and know best how to remedy it. If you allow plaintiffs or appellants to willy-nilly decide how to do this, you could be opening up a Pandora's. . . But, again, I understand they want. . . They want money, and what are they going to do with that money? For purposes of removal. . . Correct. Counsel, if that case were tried in the state court, the parties opposing the damages could still bring in these two experts that you referred to, EPA people, to decline the type of remediation that needs to be done, could they not? Yes, they could, but that's not the typical mechanism. The typical mechanism is for the EPA to come in with its experts and use state agencies to determine what needs to be cleaned up, and you typically clean up where the contamination is located. The contamination is located on the principal responsible parties in the rod. That's Brentag and Beal. Let me just add for the record, Brentag bought this facility from Dice Chemical, just so the record is clear. They acquired this facility in Montana. What I'm saying, Your Honor, is that plaintiffs cannot do the remediation. They don't own the property. They need to go on the property of Beal and Brentag and drill down wells, use a host of techniques to contain the plume and remedy the contamination. This cannot, I repeat, cannot be left in the hands of plaintiffs. What you're going to do is create a plaintiff's bar where they can go out, get these funds, take a third of it as their fee, and you're going to have less money to clean up these sites. Is this what Congress did? I mean, it looks to me like what Congress did when it said no preemption is it said plaintiffs can take the money and run, and then CERCLA can come after all of the potentially responsible parties, and if some of them are dead and gone or some of them can't be found or some of them don't have any money, that's just up for the others to count. Well, in many cases in the state courts, even in the federal courts, these claims for damages that are made based on the testimony of an expert witness, there is no guarantee that if that money is awarded to the plaintiff for those damages, that that money will be spent at all. And the people that inflate claims for damages don't get the money damages. Why is this different? Because you need to have the expertise of EPA and Montana Department of Environmental Quality looking at it. They came up with a remedy to remedy this pollution for $14 million. That is in the rod. Plaintiffs' appellants wanted $29 million. No, Your Honors, you cannot open up this Pandora's box to give plaintiffs' counsel, trial lawyers bar, a new way to just pursue these CERCLA cleanups. This is something that is dictated by EPA. They have the expertise. They know what they're doing. They have to go on the property of principally responsible parties. This cannot be left for the plaintiffs. We're talking about removal here now. Right. We're talking about removal. Correct. No questioning the expertise may lie on your side of the case, but we're talking whether this was a problem removed. Correct. Whether or not this was a CERCLA federal claim entitled to be in a federal court. That's the purpose. Right. I think there are two arguments, artfully pled, which Judge Kleinfeld has put his finger on, and also that language where they are asking for the remediation damages. You call that response cost claim. I do. I have to agree. The district judge below got it right. He hit the nail on the head. He knew what was coming, that you cannot give the money to these plaintiffs and they won't clean up the site. You have to conserve the limited funds of the responsible parties, and the EPA then can have them do the work. I think my time is almost out. Any other questions before? Given the wealth of Ninth Circuit law on this, I'm kind of surprised at the panel's reaction to this argument. The Ninth Circuit law causes you to be surprised. Well, the goals of a CERCLA cleanup. Give me a case name. Razor. Razor. I didn't see a problem with that. They're cited in our brief. Why does Razor cause you to be surprised by the tenor of the questioning is what I'm asking. Well, the Ninth Circuit is probably one of the best circuits in the nation on, you know, protecting these CERCLA cleanups and allowing them to proceed unencumbered by these activities that will disrupt the cleanup. Oh, I'm with you there. That's what I'm getting at. The CERCLA was in here saying, we want to clean this up, and the defendants were saying, no, no, no, don't do anything. Don't make us spend the money. But nobody's challenging the CERCLA's cleanup here. Mr. Cobb, I want to just read to you, regarding what the challenge has been defined by the Ninth Circuit in the Arco case. I'm sure you're familiar with that. I am. The Ninth Circuit said that it means related to the goals of the cleanup, quote, that's a quote, finding that an action was not a challenge because the relief sought would not alter the EPA cleanup requirement or environmental standard or terminate or delay any EPA-mandated cleanup, and noting that, quote, Congress did not want Section 113A to serve as a shield against litigation that is unrelated to disputes over environmental standards, end quote. That's Arco. And in that case, they found that the claim seeking to obtain documents pertaining to a CERCLA cleanup and to enjoin closed-door meetings were not related to the goals of the cleanup because they did not seek to alter the cleanup requirement or environmental standard or terminate or delay the cleanup. In another case, the claim is barred as a challenge to CERCLA. If it interferes with the implementation of a CERCLA remedy, Jack, which is American University, that's the case that you cited. That's the case we cited, Your Honor. I think that definitely supports our position. It interferes with our Unfortunately, it's a district court case. Right. I would just close by saying that Resor, I was looking for Resor in my excerpts or my materials, and I had a hard time finding it, but I finally did. And all I got out of Resor when I read it, or in your case, was it says that an EPA investigation counts as a remedial or removal action even if no plan has been decided on. And in this case, the EPA investigation was going on. But to me, that cut against you because the complaint doesn't challenge the EPA's investigation. It doesn't say that EPA is doing it wrong or that the court should order EPA to do anything different. Well, I beg to differ with you, Your Honor, and I would fall back on what I Tell me what in Resor helps you. I've got it right here. Just that the goals, if you challenge the goals of the cleanup, it is a challenge to the CERCLA cleanup. You're talking at a higher level of generality. Yes, I am talking at Okay. Tell me what in Resor is helpful to your position. Section 113H postpones a federal court's jurisdiction to hear challenges to cleanups undertaken pursuant to CERCLA until those cleanups have been completed. That's why I think it's a useful case. This cleanup has not been completed. EPA has set forth how it should be done. They had public comments. There was a public meeting. They solicited information, and they came up with a plan to clean up the property. And they should be allowed to proceed with that cleanup, and the principally responsible parties will then enter into a consent decree to facilitate that cleanup. I see no need to create this Here's my confusion about this. It looks as though Resor is not a removal action at all, and it has nothing to do with whether a state court has jurisdiction over an action for damages for nuisance. It says that the cleanups filed this complaint, which I think was in the U.S. District Court, alleging that the tribe's management of the site is violating the Clean Water Act and RCRA. And the tribes and EPA moved to dismiss the suit for lack of jurisdiction because it challenged an ongoing removal action. And the District Court and the Court of Appeals basically said, yep, it does. You were right, Your Honor. I was not citing it for the jurisdiction. I was citing it for the challenge. I think there are two issues here. You have to get jurisdiction, then there's a challenge issue. I was citing it for the challenge issue. If you want a jurisdictional case, I would refer you to North Penn Water Authority. Again, it's a District Court case from the Eastern District of Pennsylvania. You've got a lot of District Court cases going your way, and they're all, I think, founded on the practical concern that I already told you. I'm totally sympathetic to your view on it, but I just can't find the statutory words for it. What about the Artful Pleading, Doctor? And I think that would give us a basis to be in federal court. Again, I think you really have to look at the practicalities here and what the government and Congress are attempting to do. They are attempting to expeditiously clean up these sites in the most efficient way possible. Given Plaintiff's Bar at Shaftesbury. What we're saying is we should use the Artful Pleading Doctrine, and even though the state claim is not on its face a challenge, there was an ongoing cleanup action because we held in resort that the investigation was part of the cleanup action. Yes, Your Honor. And it was Artful Pleading to avoid basically challenging that. Correct. I mean, if you look at the history of CERCLA, it has worked fairly well. How does the remedy that the plaintiff sought... Pardon me, Your Honor? How does the remedy that the plaintiff sought implicate the investigation that was going on? They want to take the money for the remediation. First of all, to get the money in state court, Your Honor, they're going to have to say, here's how the remediation should be done. You should do it A, B, C, D. They're going to have to dictate a plan. They have to put a price tag on it. I guess we're kind of on different pages here. What I am looking at, the big picture, cleaning up the entire 580-acre site. To do that, you need to have a plan to remediate the entire site, take into account all of the contamination, and take into account where you're going to get the money from. I think you're concerned over the plaintiffs wanting to clean up their small lot of properties. Let me check. Correct, Your Honor. And I would have to respond to your argument is that that damage they are seeking is a challenge to the cleanup. That's the best I can really give you on that. That's precisely right, Your Honor. I could not have said it better. I tried to say that, and I probably didn't get it out. But you're absolutely right. That is an issue. And also, I think it's the substitution of plaintiff's judgment or inexperienced experts for that of the EPA, that of the MDEQ. Those are the people that work on this on a day-to-day basis. They know best how to effectuate the remediation at a super fund. I don't think that would interfere at all with EPA if there was an infinite amount of money. You could just require the dependents to give $10 million, $30 million, a billion, who cares? That's to the plaintiffs and their lawyer, and they could all live happily ever after, and then have them spend another $10 million or $30 million or $100 million or any amount of money cleaning it up if they have infinite money. Precisely. That's what I think Congress was trying to do, maximize the cleanup. It doesn't say so. It seems to me that Congress would have had to say so. It would have had to say anything relating to environmental cleanup is within the exclusive jurisdiction of federal courts subject to these circumstances, so that the money wouldn't be otherwise used up. So don't you think that if the EPA had knowledge of what this was meant, if this case goes to the state court, and the suit is received, and that person claims damages for damage to the property done, that CirCler has some provision in it that would allow them to sue, to hold that money in abeyance or in trust for the purpose of the remediation that they ultimately require? You may be right, Your Honor, but you're adding an entire layer of complexity to this. Right now as we stand here arguing about this, the rod came out in August. The next step is going to be for the EPA and MDEQ to negotiate with the principally responsible parties to get them to fund the cleanup. Now, you know, that is the most expeditious way to do it, for the EPA to bring the principally responsible parties who have done this, to get them to make them clean it up. But how long has it been since that first was declared to be a contaminated area? It was investigated in the 2000 December. It was named a Superfund site. They've had five years, and they haven't moved on it. Do they have to wait forever to get it resolved? No, but, you know, we're talking about complexities here of groundwater and how they move beneath the surface. It is not that easy to come up with a plan. You have to factor in the public comment. There was extensive comment solicited from the public. There were meetings. The EPA moves at a rate to maximize the cleanup. It does move slowly at times. But I would point you out, point out what the Ninth Circuit said, you know, in the case of McClellan. We recognize that application of Section 113H may in some cases delay judicial review for years, if not permanently, and may result in irreparable harm to other important interests. Whatever its likelihood, such a possibility is for legislators and not judges to address. We must presume that Congress had already balanced all of the concerns and concluded that the interest in removing the hazard of toxic waste from Superfund sites clearly outweighs the risk of irreparable harm. That's 487F3 at 329. I think that sums it up. Congress indicated that CERCLA, EPA needs to get a handle on these Superfund sites and clean them up. That preempts state law claims that would challenge that cleanup. And those state law claims challenge it by asking for the money to do the cleanup. To get that money, the state law claims and the state plaintiffs will have to come up with their own remediation plan. It is counterproductive to what Superfund, CERCLA were designed to do. I would ask you to reconsider what your penitentiary ruling was, Judge Rafiti. This is opening up a Pandora's box for the trial lawyers to start doing these independent funds and dictating how the cleanup should be when EPA has the expertise in that area  I think that the way you tell it, that if CERCLA has the standing and is probably a necessary party to this action and could make a claim, could join as a plaintiff in the claim, and could have standing to request that any money be held in the trust until the full CERCLA action has been taken. Well, it's another... If that's true, why can't this case go to the state court? Again, I would probably fall back on limited resources, limited funds. You know, defendants have unlimited funds, and EPA does not have unlimited resources to hire lawyers to go monitor these cases in state court. Let's say they did. How would it matter? It seems to me that under the complaint here, the plaintiffs could put on evidence in state court. They could have one expert who looks like Dr. Kildare and another one who looks like Albert Einstein tell the jury it's going to cost $100 million to clean up this site properly. It could be a total con job, totally phony. I'm hypothesizing, you understand, not talking about the real case. If the jury bought it, the plaintiffs get $100 million in damages. And then, when EPA requires the cleanup, it can be a $10 million cleanup, and when the environmentalists challenge it and say, no, no, no, there's all this evidence, you need a $100 million cleanup, the EPA can say, that was all nonsense. And they can prove it. And it just doesn't matter because all the state court did was issue a judgment requiring the defendants to write the plaintiffs a check. Well, again, I would say that we're adding a whole realm of complexity to a system that is working fairly well now. The goal of CERCLA is to expeditiously clean up these hazardous sites. And you're talking about adding a whole state court procedure where the EPA has to become involved. You're going to lengthen. I didn't do it. No, no, I didn't mean you did it. Your question was asking about this realm where the state courts are going to get involved in this cleanup. And Judge Rafiti indicated it took a long time now. You add that state court procedure, it's going to be a lot longer. I think ‑‑ Well, I think it went back to something I heard the panel indicate at the beginning. I was going to go into the reason for me standing here, and that is the manipulation of the judicial system. After Brentag settled with the appellants, they proceeded to do this interlocutory appeal with no opposition. They fully briefed it in December. And then what did they do in January, Your Honor? They sued Brentag in a mere image complaint in state court, not even waiting for this panel's decision, not even considering what the lower court said, that jurisdiction was in federal court. They took a mere image complaint, filed it in January. Okay. Okay. Well, Cook Trucking was indicated as a, I believe, a responsible party early on in the case. I can't cite you to the record because the record is fairly sparse what's before you now. It was on the removal issue. But Cook Trucking, I believe, got letters from the EPA. They were alleged to have engaged in some activity. I can't go beyond that. But they are in the case. But it's somewhat troubling, I guess, from my client's point of view, how the system is being used. That is correct, Your Honor. Well, I think the money interest is the mere image complaint, which I alluded to and expressly indicated to you was filed in January of 2005, right after the briefing in this case was done. I mean, I filed the complaint as a part of our motion to get in this court to present this information to you. I thought the briefing was totally one-sided when I looked at the record in this case. After we got that complaint, which was never served on us, by the way, one of our co-defendants read about the complaint in the paper. And so we looked at it, saw it was a mere image of this one, and immediately removed it. And then we got the appellate briefs and looked at what was being done here. But I understand your question, Your Honor. I don't have a good answer because technically we settled the case. But our interest is in, you know, the additional complaint that was filed, which is a mere image of this. The same issues are in play. I really think this case has major implications for how CERCLA is done across the nation. And I hope you carefully consider that because when I've read these cases for now, I've been working on this case for a number of years. Brentag is a major client of our firm, and I've been working with John Ross for years on this case. When you read these cases, I've not found one, not one case where they created this fund for private litigants to go ahead and decide how the remediation is to be done. It is the EPA that does this. Okay. Thank you, counsel. Thank you. Your Honor, if I may, I'd like to start by responding briefly to this claim of manipulation because I take some offense to it. I didn't hear what you said. Let me explain to you how we came here to be here today in terms of the underlying procedure. I mean, look, there was a motion for remand that was denied. The judge later thought it was worthy of an interim appeal. And that's all correct. The chemical company defendants settled this case within two days of a hearing on a motion for summary judgment on punitive damages in this case. Yes, all along. They've been intransigent on any kind of settlement issues. What happened in this case was the district court judge heard or was referred to a deposition testimony from the managers of these chemical companies that they dumped 55-gallon drums out in the horse pasture behind their facility just uphill from this neighborhood. And that's when this case settled and that's when these defendants left. I understand. I just wanted to clarify that. Let me go to the substance that Mr. Kubitschek mentioned. He mentioned three cases. He referred the court to North Penn, the BA water systems. That's a district court case, and the claim in that case was for equitable relief. The plaintiff was seeking to dictate what happened in terms of a cleanup, specific remedial measures. And the court said that that's a challenge. Plaintiffs aren't seeking to do that here. He referenced the court to Resor. That's a case where the plaintiffs sued the tribes over the way that they were implementing an agreement with EPA, and they tried to hold the tribes and EPA accountable for reporting requirements under RCRA and under the Clean Water Act. It was a claim for equitable relief to make them do that. Again, there's no claim for equitable relief in this case. And he referred you to McClellan, or it's often identified as Mess. That's a case where an environmental group sued the Department of Defense for injunctive relief, again, to compel them to conduct a cleanup in compliance with specific environmental reporting requirements under RCRA and under the Clean Water Act. Again, none of those things, those kinds of equitable claims or efforts to dictate how a cleanup is done, are at issue on the face of this complaint. Mr. Cardoso began by saying you need to start by stepping back and looking at the purpose of CERCLA. And the purpose of Section 113 of CERCLA, as it's been clearly talked about by a number of courts, and it's clear from the congressional record, and it's clear from the language of the statute, is that 113 was designed to keep polluters from using the federal judiciary to stall EPA cleanups. Counsel, could you address the practical concerns of the defense attorney? We should listen to the article. We should listen to the well-pleaded complaint because, as a practical matter, the plaintiff can extract all the available cleanup money from the defendant, legitimately spend it on other things, just as you can when the other property of yours is damaged and that the cleanup will, as a practical matter, be warranted or prevented because you can't draw blood from a stone. Initially, Judge, I would respond that that is an issue for Congress to have dealt with, and they didn't. They did exactly the opposite. I can't tell you why, but the sections 9652 and 9614 very clearly preserve to the states their right to allow state tort law recourse, and that's 9652D and 9614A. Now, that said, it's not a danger in this case because, again, like I mentioned earlier, the plaintiffs have moved the court for a trust for this money to be used, likely by EPA, to do exactly the cleanup that the chemical companies are saying this would complicate or stall. In fact, like any company, these companies would like to keep their money as long as possible, and this case presents the possibility of that cleanup fund being established sooner than EPA would establish it. It's been seven years since this site began to be investigated. It was 1998, not 2000, when EPA and DEQ came and looked at this site. EPA's projected cleanup is a 20-year cleanup. It will be 30 years from the time that these chemicals were discovered until EPA's cleanup here is addressed. What do you say to the suggestion that your client has filed this lawsuit theoretically to recover damages for damage to his property in order to avoid the possibility of having to pay much higher remedial costs imposed by the EPA in a circle action? I think I understand the previous comment of yours now, Judge. I didn't understand it at first when you talked about the plaintiff's potential liability. I don't think the fact pattern here doesn't provide for any potential liability on the part of the plaintiffs. It's pretty clear that the chemicals at this Superfund site came from these chemical companies and from Cook Trucking. The plaintiffs are just residences. Is your client entitled to the damages? Certainly they are, under state law. Is it clear that it came from your client, this contamination? It did not come from any of my clients. Wow. It does affect their property, though. Why, then, is your client entitled to the damages? These people that you're suing, are they the depositors of the stuff? Yes. The chemical companies dumped these barrels just uphill.  It runs under the ground, into their properties, and they're injured by it. They bring state law claims. What this case does is it raises critical questions of federalism, though, because Congress sought so clearly to preserve these state law claims in these sections I've just mentioned and in the congressional record. And what this company has done is turned a section of CERCLA that was designed to keep polluters from stalling EPA cleanups, and they're trying to turn it on their head and come in and use it as a shield to keep plaintiffs from bringing not only this claim to establish a fund for cleanup, but all their other state law claims. Stalling really doesn't strike me as a very sound argument. As soon as you've got EPA involved, the defendant has to do crazy to spend much money until the EPA tells them how to spend it, because he's just liable to be doing everything again. I mean, these superfund sites, the one I know about in my hometown, EPA said there's dirty dirt, and there's no place, Alaska's not big enough to have any place where you can deposit dirty dirt. So if there's burlap bags of the dirty dirt down in Utah, put them someplace in Utah, who would imagine the defendant would have to be nuts to spend money to do something with the dirty dirt, and then maybe have the defendant from pulling out a burlap bag and take it down to Utah. I used to live in Fairbanks. I went to school at UAF. Do you know if there's been any effort to go to Congress and deal with this issue that it brought here to us on a removal claim? Have there been efforts made, and this problem has been pointed out, that where a site has been identified as a superfund site, that there should be some restriction until a remediation plan has been developed that one of the property owners cannot sue the damages? No, sir, I'm not aware of any effort like that. This amendment to superfund was the Sarah Amendment. It was passed in 1986. Since then, there have been hundreds and hundreds of superfund sites, and I'm not aware that this has been an issue. As I described earlier, there's only one case that I know of on point. Do you practice in this field a lot? I do. Do you know of other cases like this, state court cases? The only one that I'm aware of is this Bernice Samples case. It's not regularly done. State courts sue for damages. No, those happen every day. They have been? Those happen every day. What's not usually done is that a company thinks of the idea to come in and use a provision that was crafted to keep companies from stalling cleanups and to turn that on its head and try to use that provision as a shield against state court liability. That's what's unusual about this case. Thank you, counsel. Thank you. We took you both way over your time limits, and the reason we did it is that we got really interested in your case. Weiss v. Krugman is submitted. We're adjourned for the day. Thank you.
judges: Kleinfeld, Graber, Rafeedie